STANLEY K. GROVENGER et al., Plaintiffs, v LABORATORY PROCE-
DURES, INC., et al., Respondents, and CAPITAL AREA COM-
MUNITY HEALTH PLAN, INC., Appellant, et al., Defendants.
(And Third-Party and Related Actions.)

Third Department, December 10, 1987

## APPEARANCES OF COUNSEL

*Hesson, Ford & Whalen (Michael J. Hutter* of counsel), for appellant.

*Carter, Conboy, Bardwell, Case & Blackmore (Deborah A. Loncto* of counsel), for Laboratory Procedures, Inc., and another, respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

Plaintiff Stanley K. Grovenger (hereinafter plaintiff) was a participant in defendant Capital Area Community Health Plan, Inc. (hereinafter CHP) when, in May 1978, he consulted with defendant Dr. Jaime Posada, an employee of CHP, regarding a growth on his right shoulder. Posada recommended that plaintiff see a surgeon. Plaintiff was then examined by CHP's surgical unit and the growth was removed by defendant Dr. Samuel R. Powers, who was affiliated with CHP. The tissue removed was sent to defendant Laboratory Procedures, Inc. for histopathological examination. Laboratory Procedures performed such service for CHP pursuant to a contract between the parties. In June 1978, the tissue was examined by defendant Dr. T.K. Rathmell, an employee of Laboratory Procedures. Rathmell's report was: "Pigmented Papillary Superficial Dermal Nevus of the Skin. These Lesions are Usually Considered Benign." On July 10, 1978, plaintiff was informed by defendant Dr. Charles Eckert, who was affiliated with CHP, that the growth which was removed was benign.

In January 1980, plaintiff returned to CHP with a large growth around his right shoulder. Surgery was performed at a hospital, after which it was determined that the growth was cancerous and that the prognosis for plaintiff was poor. Expert evidence later obtained by plaintiff indicated that the growth previously removed was malignant and that if the proper diagnosis had been made, more extensive surgery would have been performed such that the cancer may have been avoided. Plaintiff and his wife commenced a personal injury action

against, among others, CHP, Laboratory Procedures and other individuals involved in plaintiff's care. After plaintiff died of cancer on February 20, 1982, plaintiff's wife commenced a wrongful death action against essentially the same defendants.

In both actions, CHP asserted cross claims against Laboratory Procedures and its employee, Rathmell. Plaintiff's wife settled with Laboratory Procedures and Rathmell. As part of the settlement, plaintiff's wife agreed to indemnify Laboratory Procedures and Rathmell for any liability imposed on them by any cross claim or third-party action. Laboratory Procedures and Rathmell then moved for summary judgment dismissing the complaints, cross claims and third-party complaint against them. Finding that the contribution claims were barred by General Obligations Law § 15-108 (b) and that no indemnity claims could lie, Supreme Court granted the motion. This appeal by CHP ensued.

By virtue of their settlement with plaintiff, Laboratory Procedures and Rathmell were relieved of liability to any other tort-feasors for contribution (General Obligations Law § 15-108 [b]). However, any claim of indemnity which may exist against settling tort-feasors is not extinguished by the settlement *(see, Shufelt v Niagara Mohawk Power Corp.,* 109 AD2d 66; *Spector v K-Mart Corp.,* 99 AD2d 605). The issue, therefore, is whether CHP has a potential indemnification claim against Laboratory Procedures and Rathmell *(see, County of Westchester v Becket Assocs.,* 102 AD2d 34, 45, *affd* 66 NY2d 642).

CHP does not claim that any express contract providing for indemnity existed between itself and Laboratory Procedures. Rather, CHP claims that an implied contract for indemnity arose by reason of the relationship between the parties. The key feature in an indemnity situation is that one party is being held liable for another party's wrong; the party held liable then has an indemnification claim against the actual wrongdoer *(see, County of Westchester v Becket Assocs., supra,* at 46-48). In a contribution situation, the liability against each tort-feasor is premised upon individual wrongful conduct on his or her part *(see, Shufelt v Niagara Mohawk Power Corp., supra,* at 68). The instant case presents a classic contribution situation. The tortious conduct alleged against Laboratory Procedures and Rathmell was negligence in conducting the pathological testing and in reporting the results of the analysis. The principal tortious conduct alleged against CHP was in

misdiagnosing plaintiff's condition. In this regard, it is significant that the pathology report did not state that the growth removed from plaintiff was benign, but that such tissue was usually benign. Plaintiff alleges that it was CHP's doctor who, in reading the report, stated that the tissue was benign. Thus, CHP is being charged with its own negligent conduct and not, vicariously, with the negligence of Laboratory Procedures and Rathmell. A review of the record indicates that there is no basis for finding an indemnity claim against Laboratory Procedures and Rathmell in favor of CHP. Therefore, Supreme Court properly found that the claims by CHP against the settling tort-feasors were in the nature of contribution and, accordingly, are barred by General Obligations Law § 15-108 (b).

CASEY, WEISS, YESAWICH, JR., and LEVINE, JJ., concur.

Order affirmed, with costs to respondents filing briefs.